[Civ. No. 21544. Second Dist., Div. One. July 31, 1956.]

NATHAN GOLDEN et al., Respondents, v. ELLEDGE R. PENLAND, Appellant.

Elledge R. Penland, in pro. per., for Appellant.

Jack Tenner for Respondents.

WHITE, P. J.—Plaintiffs instituted this action against above-named defendants for declaratory relief and to quiet title to certain real property situated in the city of Los Angeles. Defendants Elledge and Doris Grose Penland filed an answer in which they alleged that on May 22, 1949, plaintiffs entered into a contract with defendant Elledge R. Penland under the terms of which plaintiffs agreed to establish a billiard room on the property in question together with living quarters and lease the same to the last named defendant for a period of 30 years at a monthly rental of $235 per month. That plaintiffs agreed to furnish said billiard room and defendants were to conduct and operate said business "on a 10% bonus and 6% interest plan." The answer then set forth that defendants did establish the billiard room and furnished the same at a cost of $9,475.24, for the payment of which defendants alleged they assigned their interest in some of the property here involved as security and that when the aforesaid sum was repaid to plaintiffs, plus 10 per cent bonus and 6 per cent interest, the "said real property would be re-assigned to defendants" within three (3) years from date of assign-

ment August 8, 1952. The answer then alleges that the itemized statement of expenditures in establishing said billiard room as submitted by plaintiff to defendants was incorrect. The answer then sets forth, ''That defendants were made parties defendant to an Unlawful Detainer action on the 24th day of May, 1950, and forcefully ejected from the premises on the 25th day of May, 1950, and plaintiffs have been and now are in the exclusive possession of the defendants' Billiard Room and Rooming House business at 4113 and 4115½ South Central Avenue, without due process of law.''

It appears that when the cause was assigned for trial on May 17, 1955, before Judge Joseph W. Vickers he observed that all defendants were not represented by counsel and suggested that the matter be returned to the Master Calendar Department for a continuance and reassignment. This was done and the judge in the Master Calendar Department suggested that all defendants secure counsel to prepare and file new pleadings. The cause was then continued to June 2, 1955. On June 3 the cause was assigned for trial before Judge A. A. Scott, at which time the defendants were represented by Attorney Carl A. Earles. Thereupon the following occurred:

''THE COURT: Gentlemen, I have read over these pleadings, so-called, and I wonder if we couldn't get those straightened out before we proceed here.

''I don't know whether you have had an opportunity, Mr. Earles, to digest what your clients have prepared in pro. per. They don't make much sense, do they?

''MR. EARLES: No, your Honor. At the last hearing I understand the court requested that defendants secure counsel and have counsel prepare the pleadings and serve counsel for the plaintiffs with a copy thereof.

''Of course, it was such short notice and we did the best we could in the matter, but we didn't have time to serve Mr. Tenner with a copy of the answer to the complaint, which there is no answer there.

''I discussed the matter several times with my clients. I felt that a cross-complaint should be filed in the matter, and certainly Mr. Tenner would need time to answer that cross-complaint.

''I have prepared those documents. I have not as yet filed them. I got them prepared at the last minute and the Court ordered us to go to trial on June 2d, in Department 1. So that is the position we are in at this time.

"At this time I would like to request the Court to receive these pleadings so that the issues will be joined in that manner.

"Mr. TENNER: In that case, your Honor, I agreed that the matter could be continued from the 17th of last month to the 2d, because the Court, upon assignment the last time we were up in Department 1, indicated to Mr. Penland that he thought that he should have the advice of an attorney in further proceedings in this matter. But I oppose the filing of any documents or cross-complaints at this time, because it would merely mean a further continuance of this matter.

"The reason I make this statement in opposition—and I would like to explain it because ordinarily I wouldn't do it—this case originally started, as the evidence will develop, some five years ago in an unlawful detainer case. Since that time Mr. Penland, who, by the way, is attorney himself, licensed in another State, as he has testified, has filed some six Superior Court actions, one right after the other, which have had nothing to do besides tie up all of the properties. He has, during the course of these five or six years, had some two or three attorneys at one stage of the proceeding or another.

"I am perfectly willing, as I have indicated to Mr. Earles, on the action to quiet title, to stipulate with him what the issues of contention are. I believe they are twofold: One is an alleged oral agreement for a 30-year lease, and the second is that a deed in form and in name is actually a security transaction. I think those are essentially the two triable issues of fact before this Court, but I will oppose the filing of any further documents and cross-complaints, which would have the effect again of my having to ask for the first time for a continuance in this matter.

"We want this matter adjudicated. It was continued sixteen days ago so Mr. Penland could have an opportunity to get an attorney to try this case for him.

"Now, if there is anything in those pleadings that needs to be straightened out, I will be perfectly willing to agree to that, but I am going to oppose any filing of any cross-complaint. Then I would have to file an answer to that.

"THE COURT: Have you seen the documents yet?

"Mr. TENNER: They were shown to me in court this morning.

"THE COURT: What is the basis of your cross-complaint?

"Mr. EARLES: We have prepared a cross-complaint to establish a trust in the real property. The facts, basically, are the same for each cause of action.

"MR. TENNER: May I pose a question to counsel through the Court and perhaps we can simplify this?

"*Am I in error in stating to the Court that essentially the two triable issues before this Court are, namely, (1) the existence or the effect of this alleged 30-year oral agreement for a lease; and (2) whether or not what purported to be a deed transaction was a security transaction?*

"MR. EARLES: *That is correct.*

"MR. TENNER: If we can stipulate that those are the two issues, whether or not they are succinctly posed by the defendants' pleading, I will not resort to any technicality. If those are the two issues, I suggest we try those two.

"THE COURT: Oral lease for 30 years?

"MR. TENNER: That is one of the major contentions, if the Court please.

"*I am prepared, when we have finished this discussion, to move for a judgment on the pleadings; but those are the two major contentions.*

"MR. EARLES: *That is correct, your Honor.*" (Emphasis added.)

After some further discussion between court and counsel, defendant's attorney stated in reference to his motion to file a cross-complaint, "I realize it is in the Court's discretion." The court then stated:

"I would say this, gentlemen: that in the state of these pleadings now, unless there are some affirmative defenses, some new issues injected by way of an answer, that you certainly ought to have an answer on file. As far as a cross-complaint is concerned, I think the Court would abuse his discretion to allow you at this late date to come in and file a cross-complaint."

The court then stated, "The Court will allow the amended answer to the complaint prepared by Attorney Carl A. Earles, representing Mr. and Mrs. Penland and Golden West Billiards, a co-partnership, to be filed.

"The Court, however, feels that at this late date, having in mind all of the circumstances as stated by Mr. Tenner, counsel for the plaintiffs, it would be a miscarriage of justice to allow the cross-complaint to be filed at this time. So the Court will deny the filing of the cross-complaint."

Thereupon, opening statements were made by counsel for all parties and certain municipal court files were presented. Plaintiff's motion for judgment on the pleadings was granted and a subsequent motion by defendants for a new trial was

denied, as was a motion to vacate and set aside the judgment. Defendant Elledge R. Penland prosecutes this appeal from the judgment and the order denying his motion for a new trial.

As his first ground for reversal appellant urges that "The Court erred when it denied him (appellant) the benefit of counsel in denying the request to file appropriate pleadings at the hearing of said cause." That there was no denial to appellant of the benefit of counsel is obvious. The record shows that he was represented by counsel at the suggestion of the court. However, we shall assume that what is referred to in this assignment of error is that the trial court erred in refusing to permit his counsel to file a cross-complaint on the day of trial.

While it is a fundamental rule of pleading in this state that amendments or the filing of a new pleading should be liberally allowed to the end that all issues material to the just and complete disposition of a cause may be expeditiously litigated, it is also recognized that the question of whether an amended or additional pleading should be allowed on the day of or during the trial is ordinarily committed to the sound discretion of the trial court (*Moss Estate Co.* v. *Adler,* 41 Cal.2d 581, 585 [261 P.2d 732] ; *Vogel* v. *Thrifty Drug Co.,* 43 Cal.2d 184, 188 [272 P.2d 1]). In the instant proceeding we are confronted with a situation wherein objection was made to the filing of a cross-complaint on the day of trial because it would have resulted in a further delay to afford respondents time to plead to or answer the same, in view of the fact that one of the allegations in the proposed cross-complaint sought an award of some $75,000. The court was also advised of the fact that since the original unlawful detainer proceedings in the municipal court, finally adjudicated in May, 1950, appellant had instituted some half dozen superior court actions, none of which was brought to trial. That in two cases notices of appeal were filed, but not perfected. Under the circumstances presented by the record before us we cannot say that the trial court abused its discretion in denying appellant leave to file his proposed cross-complaint.

The record does not sustain appellant's second contention that, "The Court erred when it forced Appellant to go through with the hearing based on a stipulation of two issues, which not only did not, and were not embraced in the pleadings, prepared by Appellant's Counsel, and could not

be sustained by the evidence at the hearing if produced." We have hereinbefore set forth the record in that regard as reflected by the reporter's transcript and it is barren of any coercion by the court which compelled appellant's counsel to stipulate as to the issues presented by the pleadings before the court.

As his next two grounds for reversal appellant contends, "The Court erred by adopting a procedure at the hearing which did not preserve and safeguard Appellant's private rights and constitutional guarantees," and that, "The Court erred in the proceedings, when it was known to the Court that such procedure, was not appropriate to the case, and the hearing was not fair and just to the parties to be affected by the results of said hearing." Nowhere in appellant's brief are we cited to any portion of the record and our examination thereof discloses nothing to substantiate the claim that appellant's "private rights and constitutional guarantees were not preserved" or "that the hearing was not fair."

Appellant's fifth point is that the court erred in refusing to set aside the judgment and findings upon which it was based. The record does not reflect that appellant proposed any counterfindings, nor does appellant, in his brief, offer any argument or citation to support his claim of error insofar as the findings and judgment are concerned.

In his sixth citation of error, appellant contends that the court erroneously examined the files in two municipal court actions affecting the right of possession of the real property here in question. The municipal court files both contained final judgments and the actions were between the parties herein and affected the property here under consideration. The court was therefore entitled to take judicial notice of such actions and we fail to see wherein such conduct by the court below was "in violation of the order of the municipal court and in violation of the Due Process of Law clause in the State Constitution."

Appellant's final contention is that "The Court erred when it ordered Appellant to go back to the Municipal Court and try the case; the question before the Court could not be determined under Section 1161 of the Code of Civil Procedure." This claim is without merit because nowhere in the record does it appear that the court ordered "appellant to go back to the municipal court and try the case," while section 1161 of the Code of Civil Procedure has not the remotest connection with the issues involved in the instant case.

In his opening brief appellant continually refers to a lease dated November 1, 1947, and to a contract dated May 22, 1949, and also concerning the conduct and operation of the aforesaid billiard room business. None of these matters are pertinent or germane to the issues embodied in this appeal. Insofar as the lease just mentioned is concerned, this was the lease involved in the municipal court unlawful detainer proceeding herein referred to.

Involved in this proceeding were two parcels of real property popularly known as 4113, 4115½ South Central Avenue, and 4101 South Central Avenue in the city of Los Angeles.

With reference to the property located at 4113 and 4115½ South Central Avenue, there was presented to the trial court certain municipal court records which disclosed that on April 24, 1950, respondents herein instituted an unlawful detainer proceeding in municipal court, against appellant herein. On May 9, 1950, judgment was entered for the respondents herein as prayed and notice of entry of the said judgment was served on appellant. On May 10, 1950, appellant herein filed a motion to vacate judgment. On May 12, 1950, a stipulation was entered into in open court that the motion to vacate judgment might be considered as a motion for a new trial. The same was denied, and the appeal bond was fixed in the sum of $3,000.

On May 18, 1950, a motion was filed, together with affidavit in support thereof, to quash execution (this motion was filed on behalf of Golden West Billiards), and the same was denied after argument on May 24, 1950, by the municipal court. On May 29, 1950, a motion was filed by the appellant to vacate and set aside the said judgment. On June 8, 1950, after argument the said motion was denied by the municipal court.

.As appears in respondents' brief, ''In an effort to effect collection of the judgment entered by the Municipal Court, Respondents levied execution on one William Borden who was then indebted to the Appellant in the sum of $125. Appellant herein filed a Motion to Vacate Writ of Attachment and Execution thereon, and for Order setting aside Judgment in the Municipal Court. This Motion was denied after argument on January 17, 1950.'' As to this proceeding it is manifest that the right to possession thereof by and between the parties to the instant appeal had been finally determined and the court was justified in awarding judgment on the pleadings as to that parcel of property.'' We find nothing in the record to support appellant's contention that ''the complaint is false,

that false affidavits were filed in that case; that false allegations were made, etc.''

Insofar as the property located at 4101 South Central Avenue is concerned, it is appellant's contention that the contract in connection therewith was a ''Security Transaction'' rather than an outright conveyance to respondents. Admitting the correctness of this contention, appellant concedes that upon the payment of certain sums of money on or before August 8, 1952, said property was to be ''reassigned'' to him. The latter does not contend that any of said sums was offered or paid but urges that nonpayment was occasioned by the fact that he was divested of possession of the billiard room property through the foregoing municipal court unlawful detainer action and therefore, could not perform. In other words, that being lawfully evicted from the billiard room property he was relieved of his obligation to make the payments required in order to have the other parcel of property ''reassigned'' to him. This argument lacks substantiality here.

The record supports the conclusion arrived at by the trial court that: (1) The issue of possession as to the first mentioned parcel (4113 and 4115½ South Central Avenue) had been determined in a prior municipal court proceeding and that the judgment therein had become final; and (2) that any rights to the last-mentioned parcel of property (4101 South Central Avenue) were extinguished on August 8, 1952, when, as admitted by appellant's counsel at the trial, ''the defendants could not perform.''

The attempted appeal from the order denying defendant's motion for a new trial is dismissed and the judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied August 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1956.